UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

EDITH COULTER, individually and
as assignee of VICTOR LEE HUSZAGH,

    Plaintiff,

v.                                                                          CASE NO. 4:12-cv-00577-WS/CAS

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

    Defendant.
_____/

**DEFENDANT'S MOTION TO COMPEL DOCUMENTS AND TESTIMONY
AS TO COMMUNICATIONS TO AND FROM NON-PARTIES VERNON SANDERS
AND BELINDA COULTER AND INCORPORATED MEMORANDUM OF LAW**

Defendant, State Farm Mutual Automobile Insurance Company ("State Farm"), pursuant to Fed. R. Civ. P. 37(a) and N.D. Fla. Loc. R. 26.2(B), requests the entry of an order compelling Plaintiff to produce communications to and from non-parties Vernon Sanders and Belinda Coulter regarding Plaintiff's claims against State Farm's insured, and State Farm's attempts to settle those claims. State Farm further seeks to compel testimony of Vernon Sanders regarding non-privileged communications with Plaintiff's Counsel. In support thereof, State Farm would show the following:

**Factual Background and Procedural History**

The current action arises from the underlying third-party bodily injury claim Plaintiff asserted against State Farm's insured, Victor Lee Huszagh, arising out of an automobile accident that occurred on March 20, 2009. Plaintiff alleges that State Farm acted in bad faith by failing to settle her claims against Mr. Huszagh within its $50,000 liability limits. Within seven (7) business days after the accident, State Farm offered and tendered its $50,000 per person bodily

injury liability limit to settle Plaintiff's claim and secure a release of Mr. Huszagh. In the months following the accident, State Farm wrote and phoned Plaintiff numerous times, seeking to settle Plaintiff's claim against its insured for its policy limits, but Plaintiff never responded to State Farm's overtures. During this time, and before it learned Plaintiff had hired Stephen Marino, Esquire, of Ver Ploeg & Lumpkin, P.A. ("Ver Ploeg"), State Farm re-offered and re-tendered its policy limits. In late August 2009, once it learned of Mr. Marino's involvement, State Farm again offered and tendered its limits a third time, mailing a check to Mr. Marino, in an effort to settle Plaintiff's claims against Mr. Huszagh. By letter dated September 14, 2009, Mr. Marino returned State Farm's tender, stating Plaintiff had elected to have a jury determine the value of her injuries. Mr. Marino enclosed a copy of Plaintiff's Complaint, dated September 14, 2009, against Mr. Huszagh. Plaintiff and Mr. Huszagh ultimately entered into a settlement and assignment agreement that provided for judgment in the amount of $2,000,000, executed on or about September 11, 2012. The $2,000,000.00 judgment against Mr. Huszagh was entered on October 18, 2012.

<b>Plaintiff Improperly Asserted Attorney-Client Privilege<br>in Response to State Farm's First Request for Production</b>

In the present bad faith action, State Farm served its First Request for Production on Plaintiff, and Plaintiff provided written responses and produced some documents. Along with the production, Plaintiff served a Privilege Log identifying otherwise responsive documents Plaintiff claimed were privileged. Plaintiff's Privilege Log is attached hereto as Exhibit "A." According to the Privilege Log, emails and notes Plaintiff's counsel Mr. Marino exchanged with non-parties Vernon Sanders and Belinda Coulter regarding Plaintiff's bodily injury claim(s), and

State Farm's efforts to communicate with and settle Plaintiff's claim for its policy limits,[1] were withheld. State Farm sought to compel production of the emails, believing the documents were responsive to Request No. 11 of State Farm's Request to Produce (Doc. 24). In its Order dated May 9, 2013 (Doc. 30), this Court declined to compel production, finding that the documents were not responsive to Request No. 11, as Plaintiff did not assert privilege in her response to Request No. 11 and because Plaintiff advised she had no documents to produce in response. Accordingly, the Court found no need to evaluate whether the attorney-client privilege attached to the emails to and from Vernon Sanders and Belinda Coulter. (Doc. 30, p 4). However, Request No. 6 of State Farm's First Request for Production, and Plaintiff's objection to same, encompass the communications sought between Plaintiff's Counsel Stephen Marino and both Vernon Sanders and Belinda Coulter. State Farm's discovery request, and Plaintiff's response are as follows:

> **Request No. 6**: All documents in your possession, custody or control which reflect or document any and all settlement discussions and negotiations between you and State Farm and/or Victor Lee Huszagh, or their representatives.
>
> **RESPONSE:** Plaintiff objects to this Request to the extent that it seeks the production of documents protected from discovery under the attorney-client privilege and/or work product protection. Plaintiff further objects to the extent that the Request is not limited in time or scope and is thus overbroad. Plaintiff further objects to the extent that the Request seeks the production of documents that are already within State Farm's

---

[1] The descriptions on Plaintiff's Privilege Log ("case strategy") suggest the documents sought are relevant evidence (or may lead to the discovery of relevant evidence) which State Farm may use at trial to establish it was not presented with a reasonable opportunity to settle Plaintiff's claims against its insured. See Cardenas v. GEICO Casualty Co., 760 F.Supp.2d 1305, 1309 (M.D. Fla. 2011). These documents may also shed light on when communications and settlement offers from State Farm were received by Plaintiff and what decisions Plaintiff made relative to same. Regardless of the specific content of each communication, State Farm contends no privilege applies.

possession and is thus unduly burdensome. Plaintiff will produce all non-privileged documents that are responsive to this Request and generated prior to the instant litigation.

### The Ver Ploeg Law Firm's Incomplete Production and Improper Assertion of Attorney-Client Privilege

Because Plaintiff's Counsel Mr. Marino has first-hand knowledge of the settlement discussions he had with State Farm, and has knowledge of State Farm's offers and attempts to pay its policy limits to Plaintiff, State Farm sought to depose him and obtain relevant documents from his file. Initially, State Farm served a Non-Party Subpoena on the Records Custodian of Ver Ploeg on January 24, 2013. The relevant portion of the Subpoena[2] sought the following documents:

### SCHEDULE A

1. All correspondence (including envelopes and enclosures), notes, memos, certified mail return receipts, emails, and/or facsimile transmittals, telephone message slips kept or maintained by Stephen A. Marino, Jr., Esq., and his firm Ver Ploeg & Lumpkin, P.A., reflecting or memorializing communications by, to, from or between employees of Ver Ploeg & Lumpkin, P.A., and the following individuals and entities relative to the claims of Edith Coulter arising out of the March 20, 2009 motor vehicle accident:

    A) Employees of State Farm Mutual Automobile Insurance Company

    B) Employees of Cotton States Mutual Insurance Company

    C) Employees of Progressive Insurance Company

    D) Victor Lee Huszagh

    E) Any third-party

---

[2] The Non-Party Subpoena of the Records Custodian of Ver Ploeg & Lumpkin is attached as Exhibit "B."

> 2. The correspondence file(s), cover to cover, maintained by Ver Ploeg & Lumpkin, P.A. relative to Edith Coulter's claims against State Farm Mutual Automobile Insurance Company arising from her March 20, 2009 motor vehicle accident, including all correspondence files relative to the lawsuit styled <u>Edith Coulter v. Victor Lee Huszagh</u>, case no. 2009-CA-003573, filed in the Circuit Court of Leon County, Florida. This request is limited in time from the date of the loss up through the date of the Final Judgment (October 18, 2012).

In response to the Non-party Subpoena, Ver Ploeg produced some but not all documents. Ver Ploeg also served its Revised Privilege Log, listing documents being withheld under the work product and attorney-client privileges. The Ver Ploeg Revised Privilege Log is attached hereto as Exhibit "C."

In reviewing the Privilege Log submitted by Plaintiff (Exhibit "A"), 29 separate communications between Vernon Sanders and Plaintiff's Counsel Stephen Marino are listed as withheld and subject to the attorney-client privilege. It would be expected that all emails listed on Plaintiff's Privilege Log involving Mr. Marino would necessarily also be listed on the Revised Privilege Log submitted by the Ver Ploeg law firm (Exhibit "C"). However, only 7 of the 29 communications involving Mr. Marino are listed on the Revised Ver Ploeg Privilege Log. The Ver Ploeg law firm has not provided an explanation as to why communications between Vernon Sanders and attorney Stephen Marino were neither included in the documents produced by Ver Ploeg, nor listed on the Revised Ver Ploeg Privilege Log. The Ver Ploeg law firm is required to fully comply with State Farm's subpoena, and it has failed to do so.

**<u>Ver Ploeg Attorney Stephen Marino's Failure to Comply with Deposition Subpoena</u>**

State Farm continued its efforts to obtain all relevant discovery from Plaintiff and the Ver Ploeg law firm, and on February 12, 2013, State Farm served a Notice of Taking Videotaped

5

Deposition *Duces Tecum* of Stephen Marino, Esq. A copy is attached as Exhibit "D." The relevant portion of the subpoena *duces tecum* commanded Mr. Marino to produce at his deposition the following:

### SCHEDULE A

1. All correspondence (including envelopes and enclosures), notes, memos, certified mail return receipts, emails, and/or facsimile transmittals, telephone message slips kept or maintained by Stephen A. Marino, Jr., Esq., and his firm Ver Ploeg & Lumpkin, P.A., reflecting or memorializing communications by, to, from or between employees of Ver Ploeg & Lumpkin, P.A., and the following individuals and entities relative to the claims of Edith Coulter arising out of the March 20, 2009 motor vehicle accident:

    A) Employees of State Farm Mutual Automobile Insurance Company

    B) Employees of Cotton States Mutual Insurance Company

    C) Employees of Progressive Insurance Company

    D) Victor Lee Huszagh

    E) Any third-party

2. The correspondence file(s), cover to cover, maintained by Ver Ploeg & Lumpkin, P.A. relative to Edith Coulter's claims against State Farm Mutual Automobile Insurance Company arising from her March 20, 2009 motor vehicle accident, including all correspondence files relative to the lawsuit styled <u>Edith Coulter v. Victor Lee Huszagh</u>, case no. 2009-CA-003573, filed in the Circuit Court of Leon County, Florida. This request is limited in time from the date of the loss up through the date of the Final Judgment (October 18, 2012).

Mr. Marino appeared for his deposition at the place, date and time noticed, but failed to produce any documents. Prior to the start of his deposition, he advised State Farm's counsel that he did not bring responsive records with him, asserting that all documents had already been

produced.  Mr. Marino did not serve written objections to the *duces tecum* request nor move for a protective order.  Based on a review of Plaintiff's Privilege Log (Exhibit "A"), and the Revised Ver Ploeg Privilege Log (Exhibit "C"), Mr. Marino, as an attorney with the Ver Ploeg law firm, possesses documents to and from Vernon Sanders and Belinda Coulter relative to Plaintiff's claim generated during the pre-suit period when State Farm was trying to communicate with Plaintiff and settle her claims against its insured. These emails to and from Mr. Sanders and Belinda Coulter fall squarely within Schedule A, paragraph 1.E, of the subpoena *duces tecum*.

### Plaintiff's Improper Assertion of Attorney-Client Privilege and Failure to Produce Documents at Non-Party Vernon Sanders' Deposition

On April 10, 2013, State Farm noticed the deposition *duces tecum* of Vernon Sanders.  A copy of the Notice is attached as Exhibit "E."  Vernon Sanders is Plaintiff's boyfriend (Edith Coulter Deposition pg. 9: 9-11).  Plaintiff testified Vernon Sanders handled all accident related insurance matters on her behalf while she convalesced; however she did not authorize Mr. Sanders to seek legal representation on her behalf (Edith Coulter Deposition, pg. 9: 9-11; pg. 10:6-14; pg. 16: 3 -- pg. 17: 13; pg. 17: 21-23; pg 29:11--pg 30:9).  The Notice requested Mr. Sanders produce all documents in his possession regarding the claims asserted by Plaintiff as a result of her March 20, 2009 accident, and the resulting underlying lawsuit.  See, Exhibit "E."

Mr. Sanders appeared for his deposition but did not produce any documents.  Plaintiff did not assert any relevancy objections nor seek a protective order.  At Mr. Sander's deposition, State Farm inquired about the emails he sent and received regarding Plaintiff's claims and her insurance related matters.  Mr. Marino advised he represented Mr. Sanders "for the purposes of this deposition" and claimed privilege over any communications between Mr. Marino and Mr.

Sanders, <u>at any time</u>. (Vernon Sanders Deposition, Pg. 8, l. 14 – pg. 9, l. 18). Mr. Marino also asserted that Mr. Sanders was acting as a "de facto agent for Ms. Coulter during the times when she was not capacitated" and would not allow Mr. Sanders to discuss any communications between himself and attorneys for the Ver Ploeg law firm, regardless of when the communications took place (Vernon Sanders Deposition pg. 8:23 – pg. 9:6)[3].

<b><u>Standard and Burden of Proof</u></b>

Pursuant to Fed. R. of Evid. 501, Florida law governs the determination of whether the documents at issue are privileged. Under §90.502, *Fla. Stat.*, "A communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons other than: 1) those to whom disclosure is in furtherance of the rendition of legal services to the client, and 2) those reasonably necessary for the transmission of the communication." The burden of establishing the existence of the attorney-client privilege rests on the party asserting the privilege. Section 90.502, *Fla. Stat.*; <u>In re Witness Before Grand Jury No. 82-5</u>, 558 F.Supp. 1089, 1092 (S.D. Fla. 1983) ("the burden of establishing both the existence of an attorney-client relationship and the confidential nature of the communication is on the party invoking the privilege."); <u>See also</u> <u>Black v. State</u>, 920 So. 2d 668, 671 (Fla. 5th DCA 2006).

<b>Emails To and From Vernon Sanders and Belinda Coulter and<br>
Discussions between Vernon Sanders and Plaintiff's Attorney Are Not Privileged</b>

As stated above, Plaintiff has confirmed via her privilege log that 35 separate communications to and from Vernon Sanders and/or Belinda Coulter relative to Plaintiff's liability claim against State Farm's insured exist. See Exhibit "A." Plaintiff has asserted these

---

[3] The cited excerpts of Vernon Sanders' deposition transcript are attached as Exhibit "F."

documents are protected by the attorney-client privilege as both Vernon Sanders and Belinda Coulter were "agents" of the Plaintiff at the time of the communications. State Farm disagrees with the purported privilege and has attempted, without success, to obtain testimony and/or documentation of the subject communications via requests for production, non-party records subpoenas, and deposition *duces tecum* notices. As outlined below, Plaintiff's objections to producing these communications based on the attorney-client privilege are without merit.

Mr. Sanders and Belinda Coulter are not parties to this lawsuit, and are not Plaintiff's "agents-in-fact." Plaintiff's counsel asserts that communications, as well as documents sent or received from these individuals are protected because both Mr. Sanders and Belinda Coulter were acting as "agents" for the Plaintiff at the time. Though Plaintiff testified Mr. Sanders is her boyfriend and they "operate as a couple," at the time of the accident (and still today), they were not married and maintained separate residences. Mr. Sanders was not Plaintiff's medical surrogate or authorized to make medical decisions for her; he was not given a power of attorney to act on her behalf; and he was not authorized to hire Counsel for her. (Edith Coulter Deposition, pg. 9: 9-11; pg. 10:6-14; pg. 16: 3 -- pg. 17: 13; pg. 17: 21-23; pg 29:11--pg 30:9).[4] (Vernon Sanders Deposition, pg. 6: 20 -- pg. 7:3). Belinda Coulter, Plaintiff's daughter, is also not a party (Edith Coulter Deposition, pg. 8: 18-20), and though she helped Plaintiff with household chores, she was not given a power of attorney or otherwise authorized to act on Plaintiff's behalf. (Edith Coulter Deposition, pg. 44: 3-10; pg. 16:3—pg. 17:2).

This Court recently addressed this same issue in <u>Curry v. McNeil</u>, 4:07-cv-351-SPM/WCS, 2008 WL 5157516 (N.D. Fla. December 9, 2008 ). In that case, a prisoner placed a

---

[4] The cited excerpts of Plaintiff Edith Coulter's deposition transcript are attached as Exhibit "G."

three-way call from jail with his girlfriend, who then connected the call to the prisoner's attorney, while she stayed on the line during the conversation. Id. at *5. The prisoner argued that having his girlfriend on the call was reasonably necessary for the transmission of his attorney-client communications (and thus protected) because it was the only way he could have telephoned his attorney from jail. Id. This Court disagreed, rejecting the prisoner's claim of attorney-client privilege and holding:

> Although it was easier for Petitioner to speak to his lawyer by means of a three-way call, it was not necessary. Petitioner could have asked his girlfriend to ask his lawyer to call him or visit him, or Petitioner could have written a letter to his lawyer. The presence of Petitioner's girlfriend during the communication negated the privilege.

Id. at *7.

Similar circumstances exist here, as communications between Plaintiff's counsel and Vernon Sanders continued for months following Plaintiff's accident, despite the fact that Plaintiff was able to communicate in the days after the accident and did not need an intermediary. (Bradley Coulter Deposition, pg. 17: 2-6). Plaintiff argues in her prior Response that because she was "either in the hospital or a rehabilitation facility and/or did not have regular access to email or faxes," Mr. Sanders and Belinda Coulter were "necessary intermediaries in furtherance of the rendition of legal services." (Doc. 29 at 1-2). However, just as in Curry, although it was *easier* for the Plaintiff to speak to her attorney through "agents" Vernon Sanders and Belinda Coulter, it was not necessary for her to do so. Id. As such, Plaintiff's purported third party "agents" were not reasonably necessary for the transmission of the communications and therefore any privilege asserted over the communications with these non-parties has been negated. Section 90.502, *Fla. Stat*; see also Black v. State 920 So. 2d 668, 670-671 (three-way

call from jail cell was not privileged because defendant's sister was also on the line); <u>Dupree v. Better Way</u>, 86 So. 2d 425 (Fla. 1956) (attorney-client privilege does not extend to communications between attorney and witness while acting for his client in anticipation of litigation).

Florida courts have carved out a few narrow exceptions under which the attorney-client privilege permissibly extends to the necessary intermediaries and agents through whom the communications are made. <u>See generally</u>, <u>Gerheiser v. Stephens</u>, 712 So. 2d 1252 (Fla. 4th DCA 1998); <u>Witte v. Witte</u>, 2012 WL 1108539 (Fla. 4th DCA 2012). In <u>Gerheiser</u>, the Court examined communications between an attorney and the defendant's mother while the defendant was incarcerated. Because the defendant was physically in jail, the communications between his mother and the attorney were deemed reasonably necessary for the transmission of the communication. Similarly, in <u>Witte</u>, communications with an attorney and the son and daughter of an elderly plaintiff were deemed privileged only because the plaintiff suffered from glaucoma, memory loss and deafness, and her legal documents were written in Hebrew, which plaintiff could neither read nor speak. As such, the children were considered necessary intermediaries between counsel and the plaintiff. <u>Witte</u>, at *1.

Such unique circumstances do not exist here. While Plaintiff was hospitalized following the March 20, 2009 accident, there is no evidence to establish she was unconscious, mentally incapacitated or otherwise unable to communicate for a prolonged period following the accident. To the contrary, Plaintiff's son, Bradley Coulter, testified that Plaintiff was conscious and able to

speak with him in the days following the accident (Bradley Coulter Deposition, pg. 17: 2-6). [5] Further, emails between Plaintiff's Counsel and Vernon Sanders began on March 25, 2009 (five days after the accident) and continued through October 6, 2009 (nearly five months after the accident). There is no record evidence suggesting Plaintiff was incapacitated during this entire time period. Plaintiff was able to make medical decisions related to her post-accident care and did not appoint a medical surrogate nor grant power of attorney to anyone.

Additional evidence of Plaintiff's capacity to communicate with her attorneys can be found by reviewing her Privilege Log (Exhibit "A"). By April 24, 2009, Plaintiff had the capacity to hire counsel and enter into her contract of representation by Mr. Marino. On that date, Mr. Marino sent Plaintiff what is described on the Privilege Log as a "Client representation document" (Bates label 00689). Not long after, on July 18, 2009, the Privilege Log shows two separate emails regarding "case strategy" from Plaintiff to Plaintiff's counsel (Bates labels 00611-00612 and 00684). The Privilege Log itself evidences Plaintiff's ability to communicate with her counsel, obviating any need for Plaintiff to communicate through "an agent." Clearly, Vernon Sanders was not an authorized agent or a necessary intermediary. Plaintiff was able to and did communicate directly with her counsel and with others, as Bradley Coulter confirmed, in the days following the accident.

Accordingly, the emails withheld by the Plaintiff, Mr. Marino and Mr. Sanders are responsive, non-privileged, and should be produced. Furthermore, State Farm should be afforded an opportunity to depose each witness about the substance of the emails.

---

[5] The cited excerpts of Bradley Coulter's deposition transcript are attached as Exhibit "H."

**Certificate of Compliance with Local Rule 7.1(B)**

The undersigned asserts that Counsel for State Farm has conferred with Plaintiff's Counsel in a good faith effort to resolve the issues raised in this Motion, but those efforts have been unsuccessful.

WHEREFORE, State Farm Mutual Automobile Insurance Company requests that this Court enter an Order compelling Plaintiff to withdraw its attorney-client privilege objections and produce all communications to and from Vernon Sanders and Belinda Coulter.

**TAYLOR, DAY, GRIMM, BOYD & JOHNSON**

*/s/ Bradley R. Johnson*
Bradley R. Johnson, Trial Counsel
Florida Bar No. 0709425
brj@taylordaylaw.com
Carol M. Bishop
Florida Bar No. 0821357
cmb@taylordaylaw.com
50 N. Laura Street, Suite 3500
Jacksonville, FL  32202
(904) 356-0700 Telephone
(904) 356-3224 Facsimile
Attorneys for Defendant, State Farm Mutual Automobile Insurance Company

**Certificate of Service**

I HEREBY CERTIFY that on the 17th day of May, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Bradley R. Johnson*
Attorney