**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHESSEE DIVISION**

**CASE NO. 4:12-cv-00577-WS/CAS**

EDITH COULTER, individually and
as assignee of VICTOR LEE HUSZAGH,

    *Plaintiff*,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    *Defendant*.
_____/

**MOTION FOR SUMMARY JUDGMENT**

    Plaintiff, Edith Coulter, individually and as assignee of Victor Lee Huszagh, pursuant to Fed. R. Civ. P. 56 and N.D. Local Rule 56.1, seeks entry of an Order granting judgment as a matter of law in her favor finding that State Farm Mutual Automobile Insurance Company breached the good faith duty owed to its insured, Mr. Huszagh. State Farm failed to settle Ms. Coulter's claim against Mr. Huszagh within the policy limits, despite being given the opportunity to do so, and thereby exposed Mr. Huszagh to a judgment in excess of the policy limits. The record evidence establishes that State Farm could and should have settled Ms. Coulter's claim had it acted fairly and honestly towards Mr. Huszagh and with due regard for Mr. Huszagh's interests. Instead, State Farm acted with reckless disregard for Mr. Huszagh's interests by failing to timely comply with the basic and reasonable terms of Ms. Coulter's settlement demand.

## I.     INTRODUCTION

This is a common law bad faith action arising out of State Farm's failure to settle Ms. Coulter's underlying bodily injury claim when it could and should have done so. On March 20, 2009, Ms. Coulter sustained severe and permanent bodily injuries when she was involved in a car accident with State Farm's insured, Mr. Huszagh. Mr. Huszagh's liability for Ms. Coulter's injuries was clear from the outset, and Mr. Huszagh did not contest same. The State Farm Policy was in full force and effect at the time of the Accident and State Farm raised no coverage defenses or conditions as a bar to coverage. There is no dispute that Ms. Coulter's claim, constituted a covered occurrence under the Policy and that Ms. Coulter was entitled to the full policy benefits due to the extent of her injuries.

On August 11, 2009, Ms. Coulter sent State Farm a settlement demand,[1] which contained four conditions for settlement:

(1) full compliance with Fla. Stat. §627.4137 (pertaining to the disclosure of insurance information);
(2) a written summary of the information that State Farm had obtained from Ms. Coulter's son, Bradley Coulter;
(3) an affidavit confirming that Mr. Huszagh has no additional insurance coverage that could be used to pay for Ms. Coulter's losses; and
(4) the full policy benefits available under Mr. Huszagh's Policy in a draft made payable to Edith Coulter and Ver Ploeg & Lumpkin, P.A.

Ms. Coulter was willing to settle her claim against Mr. Huszagh and provide State Farm and Mr. Huszagh with a general release in exchange for the four items requested in the August 11, 2009 letter.[2] State Farm ultimately failed to comply with two of the four components of Ms. Coulter's demand: (1) State Farm failed to provide Ms. Coulter with a complete copy of the Policy or its

---

[1] *See* Correspondence from Stephen A. Marino, Jr. to Leslie Shannahan, dated August 11, 2009 (Exhibit E).

[2] *Id*.

declaration page, pursuant to §627.4137; and (2) State Farm failed to provide Ms. Coulter with an affidavit confirming that Mr. Huszagh had no additional insurance coverage that could be used to pay for Ms. Coulter's losses.[3] State Farm thus failed to settle Ms. Coulter's claim against Mr. Huszagh within the policy limits, despite being given the opportunity to do so.

On or about September 14, 2009, as a direct result of State Farm's failure to promptly resolve Ms. Coulter's claim, Ms. Coulter filed suit against Mr. Huszagh in the Second Judicial Circuit in and for Leon County, Florida, Case No. 2009-CA-003573, for damages arising out of the Accident (the "Underlying Action"). After litigating the Underlying Action for nearly three years, Ms. Coulter and Mr. Huszagh entered into a Settlement and Assignment Agreement, whereby Mr. Huszagh assigned to Ms. Coulter his rights and interest in any cause of action he might have against State Farm arising from State Farm's failure to settle Ms. Coulter's claim.[4] Pursuant to the Settlement Agreement, final judgment in the Underlying Action was entered against Mr. Huszagh, and in favor of Ms. Coulter, in the amount of $2,000,000.00 on October 18, 2012.[5] The instant bad faith action was filed on October 31, 2012.

As assignee of Mr. Huszagh's rights under the Policy, Ms. Coulter alleged that State Farm failed to settle her claim when it could and should have done so had it acted fairly and honestly, and with due regard for Mr. Huszagh's interests. State Farm responded to the complaint, alleging: (a) that State Farm was not presented with a reasonable opportunity to settle

---

[3] *See* Transcript of Deposition of Robert Holbrook at 105:23-109:21 (confirming that State Farm failed to comply with two out of the four conditions set forth in Ms. Coulter's settlement demand). The full transcript of Mr. Holbrook's deposition is being filed contemporaneously herewith.

[4] *See* Settlement and Assignment Agreement (Exhibit I).

[5] *See* Final Judgment, dated October 18, 2012 (Exhibit J).

3

Ms. Coulter's claim; and (b) that the failure to settle Ms. Coulter's claim was due to the conduct of others, not State Farm.[6]

Under Florida law, an insurance company acts in bad faith in failing to settle a claim against its insured within its policy limits when under all the circumstances it could and should have done so had it acted fairly and honestly towards its insured and with due regard for his or her interest." *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 687 (Fla. 2004). This standard is comprised of two essential components: whether State Farm *could* have settled the claim against its insured within policy limits, and whether State Farm *should* have settled the claim within policy limits. Ms. Coulter seeks summary judgment on the issue of whether State Farm could and should have settled her claim against Mr. Huszagh.

## II.   LAW AND ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate if there are no genuine issues of material fact for trial. *Ward v. County of Orange*, 217 F.3d 1350, 1353 (11th Cir. 2000); Fed. R. Civ. P. 56(c). The movant has the initial burden of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits if any,'" that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Upon this showing, the burden shifts to the non-moving party.

The non-moving party "must do more than simply show that there is a metaphysical doubt as to the material facts," it must demonstrate a "genuine issue for trial." *Matsushita Elec.*

---

[6] *See* State Farm's Answer and Affirmative Defenses, D.E. 5 at p. 5.

*Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). After reviewing the evidence produced by the non-movant against the motion, the court must determine whether "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id*. at 587. If so, no genuine issue of material fact exists, and summary judgment is warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

### B. Florida Law Sets Forth an Insurer's Duty of Good Faith Towards its Insured

Florida's courts[7] have extensively discussed the fiduciary duties of good faith owed by an insurance company to its insured when handling claims against the insured. As Florida's Supreme Court explained in *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So.2d 783, 785 (Fla. 1980), an insurer "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Id.* at 785. This duty is borne of the dependent relationship between an insured and its insurer:

> When the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interest of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery would do so.

*Id.* (citations omitted); *see also Allstate Indem. Co. v. Ruiz,* 899 So.2d 1121, 1125 (Fla. 2005); and *State Farm Mut. Auto. Ins. Co. v. Laforet,* 658 So.2d 55 (Fla. 1995).

---

[7] Because federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. §1332(2), this Court is bound to apply the substantive law of Florida. *See Erie R.R. v. Tompkins,* 304 U.S. 64 (1938).

"At common law in Florida, the essence of a bad faith cause of action against an insurance company … is that the insurer breached its fiduciary duty owed to its insured … by wrongfully refusing to settle the case within the policy limits, and exposing its insured to a judgment which exceeds the coverage provided by the policy." *Dunn v. Nat'l Sec. Fire & Cas. Co.*, 631 So. 2d 1103, 1106 (Fla. 5th DCA 1993) (citing *Fid. & Cas. Co. of N.Y. v. Cope*, 462 So. 2d 459 (Fla.1985)). As the Eleventh Circuit recognized in *GEICO General Insurance Co. v. McDonald*, 315 Fed. Appx. 181, 184 (11th Cir. 2008), "[t]he focus of a bad faith case is on the actions of the insurer in fulfilling its obligations to the insured. The insurance company owes the insured a fiduciary duty to act in the insured's best interest. The legal standard governing an insurer's settlement conduct is one of reasonableness…"

The duty at issue in this case is State Farm's duty to settle Ms. Coulter's claim against Mr. Huszagh when, under all the circumstances, it could and should have done so, had it acted fairly and honestly towards its insured and with due regard for his interests. *See* Florida Standard Jury Instruction 404.4; *Berges v. Infinity Ins. Co.*, 896 So.2d 665, 687 (Fla. 2004). Although this standard "requires the examination of the totality of the circumstances, [and] the issue of bad faith ordinarily is one of fact for the jury… the issue of bad faith may be determined as a matter of law when the facts are undisputed." *Id*. (citing *Boston Old Colony*, 386 So.2d at 785). It is therefore within the province of this Court to enter judgment in favor of Ms. Coulter upon a finding that State Farm could and should have settled Ms. Coulter's claim because it was presented with a reasonable opportunity to settle within the policy limits and did not take the appropriate steps to effectuate that settlement.

### C. State Farm Could and Should Have Settled Ms. Coulter's Claim

Ms. Coulter's injuries stemming from the accident were grave. Ms. Coulter's left leg, arm and hand were broken, and she sustained cracked ribs and vertebrae, as well as injuries to her face, which required stitches and dental surgery.[8] As a result of her injuries, Ms. Coulter underwent several surgeries, was hospitalized for several weeks, and had to endure months of rehabilitation.[9] As a part of the Settlement and Assignment Agreement, Ms. Coulter and Mr. Huszagh stipulated that $2,000,000.00 was a fair and reasonable reflection of Ms. Coulter's damages.[10]

Under Florida law, State Farm was obligated to settle Ms. Coulter's claim within policy limits because a judgment in excess of those limits was likely. *Boston Old Colony,* 386 So.2d at 785 (An insurer has the duty to "settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so"). State Farm acknowledged that an excess judgment was probable in the instant claim as early as March 23, 2009.[11] "Where liability

---

[8] *See* Transcript of Deposition of Vernon Sanders (Exhibit K) at 10:9-23 (describing severity of Ms. Coulter's injuries and acknowledging that she underwent several operations to try to repair those injuries); *see also* State Farm Claim File Activity Log Number 10 (Exhibit A) at Bates Number Huszagh-SF10065.

[9] *Id*.

[10] *See* Settlement and Assignment Agreement (Exhibit I); *see also* Transcript of Deposition of Daniel Merrigan at 70:13-71:12 (confirming that the Agreement reflected the total amount of damages agreed upon by Mr. Huszagh and Ms. Coulter and that State Farm approved of Mr. Huszagh entry into the Agreement). The full transcript of Mr. Merrigan's deposition is being filed contemporaneously herewith.

[11] *See* State Farm Claim File Activity Log Number 16 (Exhibit A) at Bates Number Huszagh-SF10065 (documenting State Farm's acknowledgement and representation to Mr. Huszagh of his personal exposure beyond policy limits); *see also* Transcript of Deposition of Leslie Shannahan at 42:25-43:4 (acknowledging that State Farm recognized that Ms. Coulter's injuries were significant and that there was a strong likelihood that the damages would exceed Mr. Huszagh's policy limits). The full transcript of Ms. Shannahan's deposition is being filed contemporaneously herewith.

is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So.2d 12, 14 (Fla. 3rd DCA 1991).

Notwithstanding the extensive nature of her injuries, Ms. Coulter presented State Farm with an opportunity to settle her claim within Mr. Huszagh's $50,000.00 policy limits via her August 11, 2009 demand letter.[12] The conditions of Ms. Coulter's demand were reasonable in light of her injuries and State Farm had ample time to comply with each of the four conditions. State Farm nonetheless failed to meet the terms of Ms. Coulter's reasonable demand in a timely manner by failing to provide Ms. Coulter with a copy of Mr. Huszagh's insurance policy and an affidavit confirming that Mr. Huszagh had no additional insurance coverage that could be used to cover for Ms. Coulter's losses.[13]

State Farm Did Not Send Ms. Coulter the Policy That She Requested

The record evidence demonstrates that State Farm did not send Ms. Coulter a complete copy of the Policy, or even a declaration page, prior to the time that the Underlying Action was filed. Ms. Coulter's initial request for insurance information was made on or around March 25, 2009. In response to that request, State Farm sent Ms. Coulter a letter indicating Mr. Huszagh's

---

[12] *See* Correspondence from Stephen A. Marino, Jr. to Leslie Shannahan, dated August 11, 2009 (Exhibit E). State Farm makes much of the fact that it offered Mr. Huszagh's policy's limits to Ms. Coulter on two occasions prior to Ms. Coulter's August 11, 2009 demand. On both occasions, however, State Farm had made the draft payable to Ms. Coulter's health care providers (one of which was not a lien facility). And State Farm had not provided Ms. Coulter with the requested insurance information that it was required to disclose under Fla. Stat. §627.4137. As a result of State Farm's errors and omissions, Ms. Coulter was left uncertain of her rights and what she was entitled to under the Policy, and thus was not in a position to accept State Farm's offers. *See, e.g.*, *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So.2d 12, 15 (Fla. 3rd DCA 1991) (Tender of the policy limits does not automatically insulate an insurer from liability for bad faith).

[13] *See* note 1, *supra*.

$50,000 bodily injury limits, but State Farm did not enclose a copy of the Policy or a declaration page substantiating same.[14]

Ms. Coulter's second request for insurance information was made on August 11, 2009, as part of Ms. Coulter's settlement demand.[15] Ms. Coulter's settlement demand requested that State Farm provide Ms. Coulter with the documents outlined in Florida Statute §627.4137 within the time provided for in the Statute.[16] Section 627.4137 clearly and unambiguously imposes a thirty-day time frame for an insurer to comply with a request for insurance information, and expressly requires the production of a copy of the insurance policy at issue.[17] State Farm's complete response to Ms. Coulter's second request for insurance information was thus due on or before September 11, 2009.

On August 31, 2009, State Farm sent Ms. Coulter a second letter regarding Mr. Huszagh's coverage, and enclosed two policy endorsements that are irrelevant to Ms. Coulter's claim.[18] State Farm did not enclose a copy of the Policy or the declaration page for same.[19] No Policy or declaration page was provided to Ms. Coulter prior to the September 11, 2009

---

[14] *See* Correspondence from Tim Scott to Edith Coulter, dated March 25, 2009 (Exhibit C); and State Farm's Response to Ms. Coulter's Requests for Admission, at ¶4-6 (admitting that no enclosures accompanied the March 25, 2009 letter).

[15] *See* Correspondence from Stephen A. Marino, Jr. to Leslie Shannahan, dated August 11, 2009 (Exhibit E).

[16] *Id*.

[17] *See* Florida Statute §627.4137; *see also* Transcript of Deposition of Leslie Shannahan (filed contemporaneously herewith) at 51:25-52:12 (acknowledging that State Farm was aware that Florida Statute §627.4137 provided a thirty day time period within which to comply with the Statute).

[18] *See* Correspondence from Tim Scott to Stephen A. Marino, Jr., dated August 31, 2009 (Exhibit F).

[19] *Id*.

deadline.[20] State Farm's failure to timely provide Ms. Coulter with the requested insurance information constitutes a violation of §627.4137, a breach of State Farm's good faith duties to Mr. Huszagh, and a failure to comply with the terms of Ms. Coulter's settlement demand.

State Farm Did Not Send Ms. Coulter the Affidavit That She Requested

State Farm exhibited the same lack of diligence with respect to the affidavit requested by Ms. Coulter. State Farm did not present Mr. Huszagh with the affidavit he was to sign until September 11, 2009. An executed copy of the affidavit was mailed to Ms. Coulter on September 12, 2009, but was not received by Ms. Coulter until September 15, 2009 (the day after the Underlying Action had been filed due to State Farm's failure to comply with Ms. Coulter's settlement demand).

In addition to being untimely, the "Affidavit of No Other Insurance" that State Farm provided to Ms. Coulter did not comply with the specific request outlined in Ms. Coulter's demand.[21] Ms. Coulter's demand requested an affidavit "confirming that [Mr. Huszagh] has no additional insurance coverage that could be used to pay for the losses that [Mr. Huszagh] caused." The affidavit that State Farm provided for Mr. Huszagh's execution instead stated that "there was no other insurance policy in effect at the time of the accident providing any coverage on [Mr. Huszagh's] motor vehicle…" The language of the affidavit thus only addressed coverage for Mr. Huszagh's motor vehicle under the State Farm policy. It did not address other potential sources of liability coverage. Because Mr. Huszagh had just left work at the time of the accident,

---

[20] *See* Transcript of Deposition of Robert Holbrook (filed contemporaneously herewith) at 37:10-38:11 (explaining that no Policy was attached to August 31, 2009 letter).

[21] *See* Affidavit of No Other Insurance (Exhibit G); *see also* Transcript of Deposition of Leslie Shannahan (filed contemporaneously herewith) at 71:14-72:8 (acknowledging that statement in Affidavit of No Other Insurance differed from Ms. Coulter's settlement demand request and acknowledging that no other affidavit was provided to Mr. Huszagh for execution); and Transcript of Deposition of Daniel Merrigan (filed contemporaneously herewith) at 42:3-19.

a question arose as to whether there was additional insurance coverage available through Mr. Huszagh's employer.[22] The limited scope of the affidavit supplied by State Farm did not address Ms. Coulter's reasonable concern as to other available sources of insurance and thus failed to comply with the terms of Ms. Coulter's settlement demand.

<u>State Farm Undertook to Settle Ms. Coulter's Claim But Failed to Act with Reasonable Diligence</u>

There is no dispute that State Farm undertook to investigate, negotiate and settle Ms. Coulter's claim against Mr. Huszagh. The question is whether State Farm's settlement conduct was reasonable under the circumstances. *GEICO General Ins. Co. v. McDonald*, 315 Fed. Appx. 181, 184 (11th Cir. 2008) (The legal standard governing an insurer's settlement conduct is one of reasonableness). The record evidence establishes that State Farm's settlement conduct was not reasonable under the circumstances. Faced with the certainty of an excess judgment against its insured, State Farm failed to exercise due diligence with respect to its submission of the Policy documents and the "Affidavit of No Other Insurance." Had State Farm properly met the conditions of Ms. Coulter's settlement demand, Ms. Coulter's claim against Mr. Huszagh would have been settled within the policy limits, and the Underlying Action – and resulting excess judgment – would not have resulted. State Farm's careless conduct in the handling of Ms. Coulter's settlement demand was without due regard for Mr. Huszagh's interests.

Not only did State Farm fail to provide a mirror-image response to Ms. Coulter's settlement demand, it also prevented Mr. Huszagh from taking any independent action to resolve Ms. Coulter's claim on his own. On August 28, 2009, after Mr. Huszagh purportedly attempted to contact Ms. Coulter's attorneys independently,[23] State Farm requested that Mr. Huszagh

---

[22] *See* Transcript of Deposition of Victor Huszagh (Exhibit L) at 39:13-40:3.

[23] The record is devoid of any evidence that such contact actually took place.

refrain from contacting Ms. Coulter's attorneys directly and requested that all communications be handled through State Farm's office.[24] Because Mr. Huszagh had an on-going duty to cooperate with State Farm in its attempts to negotiate and settle Ms. Coulter's claim, Mr. Huszagh was required to follow State Farm's directive or risk placing his coverage in jeopardy. State Farm thus reinforced that it had the exclusive duty and right to settle Ms. Coulter's claim. State Farm ultimately failed to take the necessary steps to accomplish same. Ms. Coulter, as assignee of Mr. Huszagh's rights under the Policy, is entitled to judgment in her favor upon a finding that State Farm breached its fiduciary duty owed to Mr. Huszagh by wrongfully refusing to settle the case within the policy limits, and thereby exposing Mr. Huszagh to a judgment in excess of the policy limits.

### III. CONCLUSION

WHEREFORE, for the foregoing reasons, Edith Coulter, individually and as assignee of Victor Lee Huszagh respectfully requests that this Court enter an Order granting judgment as a matter of law in her favor finding that State Farm Mutual Automobile Insurance could and should have settled Ms. Coulter's claim within Mr. Huszagh's policy limits.

---

[24] *See* State Farm Claim File Activity Log Number 88 (Exhibit A) at Bates Number Huszagh-SF10065; *see also* Transcript of Deposition of Robert Holbrook (filed contemporaneously herewith) at 25:13-26:23 (explaining why State Farm's request that Mr. Huszagh refrain from contacting Ms. Coulter's attorneys constitutes "egregious bad faith").

Respectfully submitted,

VER PLOEG & LUMPKIN, P.A.
100 SE 2nd Street, 30th Floor
Miami, FL 33131
Telephone: (305) 577-3996
Facsimile: (305) 577-3998

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr.**
smarino@vpl-law.com
Florida Bar No. 0079170
**Rochelle N. Wimbush**
rwimbush@vpl-law.com
Florida Bar No. 74200
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr.**

CASE NO. 4:12-CV-00577-WS/CAS

**SERVICE LIST**
**EDITH COULTER, individually and as assignee of**
**VICTOR LEE HUSZAGH V. STATE FARM Mut. Auto. Ins. Co.**
**CASE NO. 4:12-cv-00577-WS/CAS**
**United States District Court, Northern District of Florida**

| | |
|---|---|
| Bradley R. Johnson, Esq. | Stephen A. Marino, Jr., Esq. |
| Carol M. Bishop, Esq. | Rochelle N. Willis, Esq. |
| Taylor, Day, Grimm, Boyd & Johnson | Ver Ploeg & Lumpkin, P.A. |
| 50 N. Laura Street, Suite 3500 | 100 SE 2nd Street, 30th Floor |
| Jacksonville, FL 32202 | Miami, FL 33131 |
| 904-356-0700 | 305-577-3996 |
| 904-356-3224 *facsimile* | 305-577-3998 *facsmilie* |
| brj@taylorday.com | smarino@vpl-law.com |
| cmb@tyaylordaylaw.com | rwillis@vpl-law.com |
| *Counsel for Defendant* | *Counsel for Plaintiff* |