IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**EDITH COULTER, individually
and as assignee of
VICTOR LEE HUSZAGH,**

    **Plaintiff,**

vs.                                                    Case No. 4:12cv577-WS/CAS

**STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY,**

    **Defendant.**

_____/

## O R D E R

       On May 17, 2013, Defendant filed a motion to compel documents and testimony to and from non-parties Vernon Sanders and Belinda Coulter.  Doc. 33.  Plaintiff has filed a response in opposition.  Doc. 47.  Discovery ended on May 24, 2013, doc. 14, and both parties filed motions for summary judgment on June 14, 2013.  Docs. 58, 61.

       The discovery at issue in this motion to compel, doc. 33, concerns State Farm's First Request for Production to Plaintiff, in which Plaintiff produced some documents but withheld some "otherwise responsive documents Plaintiff claimed were privileged" under the attorney-client privilege.  Doc. 33 at 2.  Defendant's exhibit A contains the privilege log submitted by Plaintiff's counsel in response to the First Request for

Production,[1] in which Plaintiff identifies emails and notes between her counsel and non-parties Vernon Sanders and Belinda Coulter as protected by the attorney-client privilege.  Doc. 33, Ex. A at 2-3.  Subsequently, a revised subpoena was issued with an amended discovery request, doc. 33, Ex. B, and a revised privilege log was provided.  Doc. 33, Ex. C.  Thereafter, State Farm served a notice of taking videotaped deposition duces tecum of Plaintiff's counsel, Stephen Marino, Esquire, which contained an identical request for production as was included in the amended discovery request.  *Cf.* Doc. 33, exhibits B, D.  When counsel appeared for the deposition, he advised that no responsive documents were brought as they had already been provided.  Doc. 33 at 6-7.  State Farm subsequently noticed Vernon Sanders (Plaintiff's boyfriend) for a deposition duces tecum.  *Id.* at 7.  Similarly, Sanders appeared for the deposition but did not bring any documents.  In asserting the attorney-client privilege at Sanders' deposition, Marino advised that "Sanders was acting as a 'de facto agent for Ms. Coulter during the times when she was not capacitated' . . . ."  *Id.* at 7-8.

State Farm contends that in comparing the initial privilege log (Exhibit A) with the revised privilege log (Exhibit C), only 7 communications between Vernon Sanders and counsel Marino are listed in the revised privilege log, but 35 communications were listed initially.  *Id.* at 5, 8.  State Farm asserts that no explanation has been provided as to why some of the communications were not listed on the revised privilege log or included in the documents produced.[2]  *Id.*  Moreover, State Farm challenges the assertion of the

---

[1] That discovery response and privilege log, according to the certificate of service, was provided to State Farm on February 25, 2013.  Doc. 33-1 at 5.

[2] Plaintiff explains that the differing responses were "due to the specific wording of State Farm's requests."  Doc. 47 at 8.  The first request was much broader than the

attorney-client privilege to those communications between counsel Marino and Vernon Sanders and Belinda Coulter, Plaintiff's daughter. Doc. 33 at 8. State Farm contends that Sanders and Belinda Coulter are not parties to this case, are not "agents-in-fact" for Plaintiff, and were not acting as agents for Plaintiff, nor were they given power of attorney or were "necessary intermediaries in furtherance of the rendition of legal services." Id. at 9-10. State Farm contends that because Plaintiff was conscious and could speak, and because there "is no record evidence suggesting Plaintiff was incapacitated during" the five month period of time immediately following the accident,[3] Plaintiff's assertion of the attorney-client privilege is without merit. Doc. 33 at 9-12.

**Plaintiff's Response**

Plaintiff asserts that the motion to compel is "untimely, redundant, and misapplies the burden of proof required to uphold the confidentiality of attorney-client privileged communications where third party agents are involved." Doc. 47 at 1. While the initial discovery was produced on February 25, 2013, and revised in March 2013, the Federal Rules of Civil Procedure do not provide a time deadline in which a motion to compel must be filed. The timeliness argument is rejected.

Because a motion to compel was previously filed by State Farm concerning this same discovery, see doc. 24, Plaintiff argues that "State Farm should not get a second

---

second subpoena duces tecum. Id. at 8-9.

[3] The communications "began on March 25, 2009, (five days after the accident) and continued through October 6, 2009 (nearly five months after the accident)." Doc. 33 at 12. "By April 24, 2009, Plaintiff had the capacity to hire counsel and enter into her contract of representation by Mr. Marino." Id.

Case No. 4:12cv577-WS/CAS

bite at the apple simply because its first request for relief was in error[4] and subsequently denied." Doc. 47 at 2.  Plaintiff contends that "the Rules of Civil Procedure do not permit a party to raise its objections in a series of motions." *Id.* at 2. No rule was cited for that proposition.  Because State Farm's second motion to compel concerns a different request number, and a supplemental motion is not prohibited, the redundant argument is also rejected.

Plaintiff also argues that the discovery request goes beyond the scope of relevant discovery in bad faith actions.  Doc. 47 at 3.  Plaintiff contends the "only relevant issue is the manner in which the insurance company has handled the underlying claim or suit." *Id.*  Pursuant to Rule 26(b)(1), "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).  Here, it cannot be said that this discovery request is not "reasonably calculated" to lead to such evidence; thus, it is deemed relevant.

Plaintiff argues that the attorney-client privilege extends to communications which are intended to be confidential when made to family members, agents or intermediaries of the client and where the communication is reasonably necessary to or in furtherance of the rendition of legal services to the client." Doc. 47 at 4.  Plaintiff states that "[t]wenty-four of the thirty-five communications withheld as privileged took place during the roughly two-month span following the March 20, 2009 accident, when Ms. Coulter was either hospitalized or in a rehabilitation facility." Doc. 47 at 7.  "At

---

[4] The prior motion to compel attacked Plaintiff's response to request for production number 6 when the arguments apparently should have been directed to request for production number 11.  Doc. 47 at 2; *see also* docs. 24, 29, and 30.

various points during this time, Ms. Coulter has testified that she was unconscious, heavily medicated, undergoing various surgeries or procedures, or otherwise incapable of making rational decisions given her condition." *Id.* Furthermore, Plaintiff advised:

> In the months following her release from the rehabilitation facility, including through June of 2009, Ms. Coulter has testified that she was still so busy with her rehabilitation that she did not handle much of anything. (Citation omitted). With respect to the remaining communications, Mr. Sanders and Ms. Coulter have confirmed that Mr. Sanders frequently transmitted communications on behalf of Ms. Coulter because Ms. Coulter did not have regular access to email or a fax machine. Thus, while Ms. Coulter's daughter and boyfriend might not have had express written authority to handle Ms. Coulter's legal affairs immediately following the accident, they certainly had implicit authority to do so, which authority was later ratified by Ms. Coulter.

Doc. 47 at 7.

Rule 501 of the Federal Rules of Evidence directs that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." In this case, Florida law supplies the rule of decision and the Court must look to Florida law on the issue of the attorney-client privilege as codified in § 90.502 of the Florida Statutes. As is relevant here, the statute provides that "[a] communication between lawyer and client is 'confidential' if it is not intended to be disclosed to third persons other than: [1] Those to whom disclosure is in furtherance of the rendition of legal services to the client[;] [2] Those reasonably necessary for the transmission of the communication." FLA. STAT. § 90.502(1)(c). The statute provides that "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." FLA. STAT. § 90.502(2). The privilege may be claimed by the client or the

lawyer on behalf of the client. FLA. STAT. § 90.502(3)(a),(e). Thus, in accordance with the explicit language of the statute, the privilege still exists even though a protected communication is disclosed or transmitted through "necessary intermediaries and agents." See Gerheiser v. Stephens, 712 So.2d 1252, 1254-55 (Fla. 4th DCA 1998) (citations omitted) (concluding that trial court correctly determined that the defendant's mother's [Gerheiser] conversation with a prospective attorney "was protected by the attorney-client privilege, as she was acting as an agent for her son for the purpose of securing legal representation for him."). The question in this case is whether communications are protected even though transmitted through Plaintiff's boyfriend[5] (Sanders) and daughter (Belinda Coulter).

State Farm contends they are not protected because Plaintiff never gave Sanders or her daughter a power of attorney, nor had Plaintiff designated them as her medical surrogate to make medical decisions for her. Doc. 33 at 9. No cases have been cited which require the existence of those documents before the privilege can be applicable, nor is such a requirement is not included in § 90.502(1)(c)2.

State Farm also argues that because Sanders was not authorized to hire counsel for her, the privilege should not apply. Doc. 33 at 9. Again, it is immaterial whether Sanders was authorized to hire an attorney for Plaintiff, what is material is whether Sanders and her daughter were "reasonably necessary" to transmit communications to or from Plaintiff and her counsel. Plaintiff has asserted that they were necessary

---

[5] Plaintiff testified in her deposition that her relationship with Sanders has lasted seven-and-a-half years, and that although they maintain separate residences, they essentially reside together. Doc. 33-7 at 4-5. "What time we aren't at his house, we're at my house . . . ." Id. at 4.

Case No. 4:12cv577-WS/CAS

because "after the accident she was unconscious, heavily medicated, undergoing various surgeries or procedures, or otherwise incapable of making rational decisions given her condition."  Doc. 47 at 6, n.2.  Plaintiff further advised that "Sanders frequently transmitted communications on behalf of [Plaintiff] because [Plaintiff] did not have regular access to email or a fax machine."  Doc. 47 at 7.  It appears that in the usual sense of the word, Plaintiff was incapacitated during the period in which she was in the hospital or in a rehabilitation facility.  Because of that incapacity, Plaintiff needed the assistance of Sanders and her daughter to facilitate communication with her attorney.  These third persons may not have been absolutely necessary, but it appears they were "reasonably necessary" to transmit such communications.  Because Plaintiff has shown that at all times, there was "a reasonable expectation of privacy with respect to the communications at issue," the privilege exists and is entitled to protection.  The motion to compel, doc. 33, is denied.

Accordingly, it is **ORDERED** that Defendant State Farm's motion to compel, doc. 33, is **DENIED**.

**DONE AND ORDERED** on June 20, 2013.

S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**